UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------x
UNITED STATES OF AMERICA,          :      07-CR-03 (LAP)
                                   :      18-CV-1856 (LAP)
           -v.-                    :
                                   :      MEMORANDUM & ORDER
DELROY LEE,                        :
                                   :
              Defendant.           :
------------------------------------x
```

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Delroy Lee's motion for plenary resentencing or, in the alternative, compassionate release (dkt. no. 1026, the "Motion"), the Government's opposition (dkt. no. 1027), and Defendant's reply (dkt. no. 1031). Defendant also submitted two supplemental letters. (Dkt. nos. 1038, 1040.) For the reasons set out below, Defendant's motion is denied.

I. **Background**

a. **The Indictment and Charges**

Superseding Indictment S4 07 Cr. 3 (BSJ) ("Indictment"), filed on February 20, 2008, charged the Defendant and twenty-two other members and associates of a violent criminal enterprise identified as the DeKalb Avenue Crew (the "Crew"). (Dkt. no. 93.) The Defendant was charged in fifteen counts:

- Count 1: racketeering, in violation of 18 U.S.C. §§ 1961 & 1962(c);
- Count 2: racketeering conspiracy, in violation of 18 U.S.C. § 1962(d);

1

- Count 3: felony murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1);
- Count 5: felony murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1);
- Count 6: narcotics conspiracy, in violation of 21 U.S.C. § 846;
- Count 7: murder in connection with a drug crime, in violation of 21 U.S.C. § 848(e)(l)(A);
- Count 8: robbery conspiracy, in violation of 18 U.S.C. § 1951;
- Count 12: robbery, in violation of 18 U.S.C. § 1951;
- Count 14: attempted robbery, in violation of 18 U.S.C. § 1951;
- Count 16: use of a firearm in connection with a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i);
- Count 17: use of a firearm in connection with a drug trafficking offense resulting in death, in violation of 18 U.S.C. § 924(j)(1);
- Count 22: use of a firearm in connection with a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 924(c)(1)(C)(i);
- Count 24: use of a firearm in connection with a crime of violence resulting in death, in violation of 18 U.S.C. § 924(j)(1);
- Count 25: use of a firearm in connection with a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 924(c)(1)(C)(i); and
- Count 27: felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

(Id.)

### b. The Offense Conduct

From approximately 1997 through 2007, members of the Crew participated in selling narcotics, including crack cocaine, powder cocaine, and marijuana; murder; armed robbery; and other firearms offenses. (Presentence Investigation Report, dated June 13, 2011 ("PSR") ¶¶ 58-59.) Over this time period, the

Crew distributed more than 4.5 kilograms of crack cocaine, more than 5 kilograms of powder cocaine, and more than 1,000 kilograms of marijuana. (Id. ¶ 72.) Members of the Crew, including the Defendant, possessed, carried, and used firearms during the narcotics sales and robberies. (Id. ¶¶ 64, 72.) They also engaged in armed robberies and murderers of drug dealers. (Id. ¶ 59.) The Defendant participated in several armed robberies. For instance, in January 2005, the Defendant and other co-conspirators planned a robbery of a known marijuana dealer. (Id. ¶ 116.) When they entered the apartment of their target, they encountered a woman babysitting a young baby. (Id.) They tied the babysitter up with cords, and when she said she did not know where any money was, the Defendant cocked a gun behind her head. (Id.) The Defendant and his co-conspirators eventually found, and stole, approximately $20,000 in cash. (Id.) In September 2006, the Defendant was involved in another robbery, where the Defendant and others held two women at gunpoint while they ransacked an apartment of a known cocaine dealer. (Id. ¶ 120.)

Most troublingly, the Defendant also participated in the robberies and murders of two people, Patrick Taylor and Bunny Campbell. (Id. ¶ 70.) First, the Defendant and his brother, Hisan Lee, were involved in the murder of Patrick Taylor. Taylor had supplied the Defendant and other members of the Crew

with crack cocaine in 1999 and 2000.  (Id. ¶ 97.)  In August
2000, the Defendant and Hisan Lee staged a plan to kidnap and
rob Taylor.  (Id.)  The Defendant and Hisan Lee kidnapped Taylor
from his apartment and beat and burned him with cigarettes to
try to extract the locations of his drugs and money.  (Id. ¶
98.)  Taylor revealed some information, which led Hisan Lee and
another co-conspirator to rob Taylor's girlfriend that day as
well.  (Id.)

After this, Taylor was shot and killed in the front seat of
his car; he was shot eight times in the back and head, with two
different guns.  (Id. ¶ 99.)  There was ample testimony at trial
tying the Defendant to Taylor's murder.  For instance, several
witnesses testified that the Lee brothers both told some of the
other drug dealers on DeKalb about the robbery and bragged about
how they had killed Patrick Taylor.  (Trial Transcript, dated
February 22, 2010 ("Tr.") at 827, 835, 1905-09, 2264-65.)
Cooperating witness Keith Harry, for example, testified that
"they were both arguing and bragging about how they had killed
Freddy and how he was begging for his life[.]"  (Tr. at 835.)
In total, the Defendant and Hisan Lee stole approximately 2
kilograms of cocaine, more than 50 grams of crack cocaine, and
approximately $40,000 in cash from Taylor.  (PSR ¶ 100.)  The
Defendant and his brother used the funds to purchase two cars

and were found in Virginia with some of the stolen drugs.  (Id.
¶¶ 67, 79, 101.)

Second, the Defendant was involved in the attempted robbery
and murder of Bunny Campbell in April 2005, almost five years
after the Taylor murder.  (Id. ¶ 106.)  The Defendant and others
hatched a plan to rob Campbell, who lived in the same building
as the Defendant and was believed to be in possession of
marijuana.  (Id.)  On April 1, 2005, the Defendant called one of
his co-defendants and left the building, and two individuals
entered the building to rob Campbell.  (Id. ¶ 107.)  Shortly
thereafter, the Defendant returned to the building where he shot
and killed Campbell.  (Id.)

The Defendant was arrested two years later, in April 2007.
(Id. ¶ 125.)

### c. The Prior Felony Information and Plea Offer

On January 25, 2010, the Government filed a prior felony
information notifying the Defendant that he was subject to the
enhanced penalties of 21 U.S.C. §§ 812, 841(a), and 841(b)(1)
based on his conviction upon a plea of guilty on or about
November 8, 2001 in New York Supreme Court, Bronx County, for
the attempted criminal sale of a controlled substance in the
third degree, for which the Defendant received a sentence of one
year of imprisonment.  (Dkt. no. 352.)  The prior felony
information had the effect of doubling the mandatory minimum for

5

Count Six, the narcotics conspiracy, from ten to twenty years pursuant to 21 U.S.C. §§ 846, 841(b)(1)(A), and 851.

On or about February 1, 2010, the Government offered the Defendant the chance to plead to a superseding information that did not carry a mandatory minimum of life.  (See dkt. no. 715 at 49-56.)  The Defendant did not accept the plea and proceeded to trial.

### d. The Verdict and Sentencing

After an almost 20-day trial, the jury convicted the Defendant on all counts.  The parties appeared before the Court for sentencing on March 25, 2011.  The Court sentenced the Defendant to life imprisonment plus 30 years.  (Dkt. no. 501; Sentencing Transcript, dated March 25, 2011 ("Sentencing Tr.").) This included a sentence of mandatory life imprisonment on Counts 3 and 5, both for felony murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1).  (Sentencing Tr. at 9:1-5.)  During sentencing, the Court stated:

> Murder is just about the most serious offense that one
> can commit, and the law provides that with respect to
> Counts 3 and 5 in this case there is a mandatory life
> imprisonment that must be imposed.  I believe that it's
> justified in this case.  As I said, murder is an
> incredibly serious offense, perhaps the most serious
> offense.  This sentence is necessary to promote respect
> for the law and to provide punishment and to provide
> deterrence, not just to Delroy Lee but to others, and to
> protect the public from further crimes.

(Id. at 9:1-11.)  The Defendant's sentence also included a life sentence on Counts 1, 2, 7, 17, and 24, all to run concurrently; 20 years imprisonment on Counts 6, 8, 12, and 14, to run concurrently with the life counts; no sentence for Count 25; 10 years on Count 27, to run concurrently with the life terms, the 20-year terms; five years on Count 16, to run consecutively to all other terms; and 25 years on Count 22, also to run consecutively to all other times.  (Id. at 9:14-10:9.)

### e. Post-Trial Proceedings

On February 28, 2018, the Defendant filed a pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C § 2255 raising several claims.  (Dkt. no. 715.)  While that motion was pending, the Supreme Court decided United States v. Taylor, 142 S. Ct. 2015 (2022), and the Court ordered the parties to file supplemental briefing to address Taylor's impact on the Defendant's habeas petition.  On August 25, 2023, the court vacated the Defendant's conviction on Counts 24 and 25 in light of Taylor but otherwise denied his claims.  (Dkt. no. 981.)

On May 15, 2024, the Defendant requested a sentence reduction under the First Step Act ("FSA") or, in the alternative, a de novo resentencing hearing following the Court's opinion and order vacating in part the Defendant's sentence under § 2255; he also requested appointment of counsel.

7

(Dkt. no. 1012.)  On May 31, 2024, the Court appointed counsel. (Dkt. no. 1014.)  The Motion followed.

## II.  **Discussion**

### a. **De Novo Sentencing**

When a court finds a sentence was not "authorized by law . . . the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).  A court has discretion to conduct a de novo resentencing but need not do so if it would be an "empty formality" or "strictly ministerial."  United States v. Pena, 58 F.4th 613, 623 (2d Cir. 2023); see, e.g., United States v. Ayyad, No. 20-3832, 2023 WL 1975682, at *1 (2d Cir. Feb. 14, 2023) (affirming denial of de novo resentencing as "entirely academic").

Although the Court has vacated two of Defendant's fifteen counts of conviction, his remaining thirteen counts of conviction impose six concurrent terms of life in prison (two of which were mandatory), five concurrent terms of 20 years imprisonment, and consecutive terms of five years imprisonment and 25 years imprisonment.  This is a classic case in which resentencing would be an "empty formality."  Pena, 58 F.4th at 623.  Whatever occurs at a de novo resentencing, the Defendant

would still receive a life sentence and more, much of which is mandatory.

Defendant argues without citation that a de novo sentencing will "enable him to seek further relief on a fresh slate should the law continue to change in his favor."  (Motion at 23-24.) Not only is this argument speculative, but Defendant offers no reason why granting or denying de novo sentencing at this time would have any effect on his seeking relief in the future. Accordingly, the request for de novo sentencing is denied.

### b. Sentencing Reduction Under the FSA

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." United States v. Dillon, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)).  Section 3582(c)(1)(B) provides one such circumstance: "[A] court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."  18 U.S.C. § 3582(c)(1)(B).

Section 404(b) of the FSA provides, in relevant part, that a court may impose a reduced sentence for a "covered offense" "as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed."  FSA § 404(b).  A "covered offense" is defined as a "violation of a

9

Federal Criminal Statute, the statutory penalties for which, were modified by section 2 or 3 of the Fair Sentencing Act . . . that was committed before August 3, 2010." <u>Id.</u> § 404(a). Accordingly, in determining whether a conviction is for a "covered offense," courts must "ask whether the Fair Sentencing Act modified the statutory penalties for petitioner's offense." <u>Terry v. United States</u>, 593 U.S. 486, 492 (2021). Section two of the FSA increased the minimum quantity of crack cocaine base that triggers mandatory minimum sentences, and section three eliminated the five-year mandatory minimum sentence for simple possession of crack cocaine. <u>See</u> <u>United States v. Fletcher</u>, 997 F.3d 95, 96 (2d Cir. 2021).

The Government and the Defendant agree that Counts One and Two, racketeering in violation of 18 U.S.C. §§ 1961 & 1962(c) and racketeering conspiracy in violation of 18 U.S.C. § 1962(d), are covered offenses under the FSA. With respect to Count Seven, drug-related murder, a violation of 21 U.S.C. § 848(e)(1)(A), they disagree. The Court finds that Count Seven is not a covered offense. The Court of Appeals held specifically in <u>United States v. Guerrero</u>, 813 F.3d 462, 465-66 (2d Cir. 2016) that the FSA does not "extinguish any criminal liability under § 848(e)(1)(A)." <u>Guerrero</u> remains good law. <u>See</u> <u>United States v. Aquart</u>, 92 F.4th 77, 91 (2d Cir. 2024); <u>United States v. Fletcher</u>, 997 F.3d 95, 97-98 (2d Cir. 2021).

Accordingly, the FSA does not affect Defendant's life sentence
under Count Seven.

Importantly, even if a defendant's sentence is for a
"covered offense," a reduction under the FSA "'is discretionary
. . . and a district judge may exercise that discretion to deny
relief where appropriate.'"  United States v. Moore, 975 F.3d
84, 87 (2d Cir. 2020) (quoting United States v. Johnson, 961
F.3d 181, 191 (2d Cir. 2020)).  This includes the "discretion to
decide what factors are relevant as it determines whether and to
what extent to reduce a sentence."  Id. at 92 n.36; see, e.g.,
United States v. Williams, No. 00-CR-1008 (NRB), 2019 WL
5791747, at *4 (S.D.N.Y. Oct. 17, 2019) (declining to grant
relief under the FSA and noting that the § 3553(a) factors did
not counsel a modification of the defendant's sentence).

In any event, the Court declines to reduce Defendant's life
sentence under the FSA in light of the extreme seriousness of
his underlying conduct and the fact that two counts on which he
was convicted carried mandatory life sentences.  Defendant still
merits life imprisonment under 18 U.S.C. § 1963(a) based on
several racketeering acts, including the kidnapping and murder
of Patrick Taylor and the murder of Bunny Campbell.
Accordingly, the Court declines to reduce Defendant's sentence
under the FSA.

### c. Compassionate Release

*1. Applicable Law*

Under 18 U.S.C. § 3582, as amended by the FSA, the court "may not modify a term of imprisonment once it has been imposed except that":

> [T]he court, upon motion of the Director of the Bureau of Prisons [(the "BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

"Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf." United States v. Corbett, No. 10-CR-184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023) (citing United States v. Philibert, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2020). But in 2018, Congress enacted the FSA and "authorized courts to reduce a term of imprisonment upon motion by a defendant." United States v. Amato, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

The Sentencing Commission is responsible for "describe[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Accordingly, even before the FSA was enacted, the Sentencing Commission promulgated a policy statement—Section 1B1.13 of the Guidelines—concerning sentence reductions under Section 3582, which explained, among other things, what constitutes an extraordinary and compelling reason for a sentence reduction. See U.S.S.G. § 1B1.13(b).

In September 2020, the Court of Appeals held that this policy statement "applied only to a 'motion of the Director of the Bureau of Prisons,' see U.S.S.G. § 1B1.13 (historical note), and not 'to compassionate release motions brought by defendants[.]'" Corbett, 2023 WL 8073638, at *3 (quoting United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020)). As a result, the Court of Appeals explained that the policy statement did not "constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." Brooker, 976 F.3d at 236. Even though Section 1B1.13 did not govern compassionate release motions filed by a defendant, district courts were nevertheless able to "look[] to § 1B1.13 for guidance in the exercise of [their] discretion" when considering such a motion. United States v.

Rodriguez, No. 16-CR-07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020).

However, "[e]ffective November 1, 2023, . . . the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions." Corbett, 2023 WL 8073638, at *3 (citing U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023)). "The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated." Id. Section 1B1.13 of the Guidelines, as amended, explains what circumstances, "singly or in combination," constitute extraordinary and compelling reasons for release. Id. These include, at a high level, certain medical circumstances of the defendant, the age of the defendant, certain family circumstances, whether the defendant was the victim of abuse while in custody, other circumstances of similar gravity, and changes in law that make the defendant's sentence unusually long. See U.S.S.G. § 1B1.13(b); United States v. Mendez-Rojas, No. 11-CR-929 (PAE), 2024 WL 4345561, at *3 (S.D.N.Y. Sept. 30, 2024).

In short, when a court considers a motion for compassionate release filed by a defendant, the court may only grant that motion where the defendant has demonstrated that (i) he has exhausted his administrative remedies, (ii) there are extraordinary and compelling reasons for a reduction of the sentence, (iii) the

Section 3553(a) factors favor such a reduction, and (iv) such a reduction is consistent with the Sentencing Commission's policy statements. <u>See</u> 18 U.S.C. § 3582(c)(1)(A)(i). The defendant, as the proponent of the motion, bears the burden of proving that he is entitled to the requested relief under Section 3582. <u>See</u> <u>United States v. Butler</u>, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); <u>United States v. Ebbers</u>, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction.") (citing <u>Butler</u>, 970 F.2d at 1026); <u>United States v. Givens</u>, No. 14-CR-546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

Additionally, if the Court "concludes that the applicable § 3553(a) factors do not support a sentence reduction, it need not determine whether the defendant has shown extraordinary and compelling reasons." <u>United States v. Giattino</u>, No. 23-6918-cr, 2024 WL 4579342, at *2 (2d Cir. Oct. 25, 2024) (summary order) (citing <u>United States v. Keitt</u>, 21 F.4th 67, 73 (2d Cir. 2021) (per curiam)); <u>see also</u> <u>United States v. Ramirez</u>, 571 F. Supp. 3d 40, 45 (S.D.N.Y. 2021) ("A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.").

The statute also "sets out a fourth requirement: that the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" Keitt, 21 F.4th at 71 n.2 (quoting 18 U.S.C. § 3582(c)(1)(A)).  The relevant Sentencing Guidelines policy statement, U.S.S.G. § 1B1.13, sets forth requirements that must be met before a court can reduce a sentence.  See 18 U.S.C. § 3582(c)(1)(A).  As relevant here, section 1B1.13(b)(6) provides as follows:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

The defendant bears the burden of proving that he is entitled to the requested relief under Section 3582(c)(1)(A).  See United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992); accord United States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021).

*2. Discussion*

While the Court agrees that Defendant's life sentences are long, because they were imposed pursuant to mandatory, statutory requirements, they cannot be said to be "unusual."  Defendant argues that the average federal sentence for murder nationally in

16

2023 was 285 months and "just less than 20 years" in the Southern District of New York. (Motion at 30, 34-35.) However, those facts are of little relevance in light of Defendant's offenses of conviction, mainly his participation in the murder of two people as part of his racketeering scheme. Thus, the Court finds that Defendant's sentence was not "unusually long."

Nor is there a "gross disparity" between the Defendant's sentence and the sentence he would receive today. Indeed, the Defendant would receive the same sentence of mandatory life imprisonment on the two counts of murder in aid of racketeering for which he was convicted. Accordingly, there is no disparity at all, let alone a "gross disparity," between the Defendant's current sentence and the sentence he would receive if he were sentenced today. See United States v. Elwood, No. 92-CR-469, 2024 WL 454976, at *5 (E.D. La. Feb. 6, 2024) (finding no "gross disparity" between the defendant's life sentence for murder in aid of racketeering and the sentence the defendant would receive today, due to the statute's mandatory minimum of life imprisonment); McGruder, 2024 WL 3176237, at *1 (similar). This Court similarly rejects such speculation.

Defendant posits that changes in "practice" and "policy" "would not support the manner in which [he] was charged" and may have impacted a plea offer. (Motion at 30, 31.) Such speculative arguments about the exercise of prosecutorial discretion have been

rejected.  See, e.g., United States v. Anderson, No. 19-CR-771
(VB), 2023 WL 1070220, at *1-2 (S.D.N.Y. Jan. 27, 2023) (noting
that "newly promulgated DOJ charging and sentencing policy does
not constitute a change in sentencing law," remarking that record
provided no basis "to believe the U.S. Attorney's Office would
make a different discretionary charging decision today—i.e., a
more favorable plea offer," and refusing to "speculate as to what
charging decision would be made today"); United States v. Frezzel,
No. 17-CR-0208 (AJS), 2024 WL 3328711, at *6-7 (W.D. Pa. July 8,
2024) (similar).

In any event, Defendant has not established extraordinary and
compelling circumstances meriting release.  While Defendant's
efforts at rehabilitation are to be commended, they are hardly
extraordinary, particularly in light of his dozen or so
disciplinary infractions, including as recently as 2022.  This
case is thus distinguishable from the two cases upon which the
Defendant principally relies.  See United States v. Underwood, No.
88-CR-822 (SHS), 2021 WL 3204834, at *3-4 (S.D.N.Y. Jan. 15, 2021)
(granting relief in light of COVID-19 and the defendant's "full"
rehabilitation, emphasizing that he had received zero disciplinary
infractions in 33 years); United States v. Quinones, No. 00-CR-
761-1 (JSR), 2021 WL 797835, at *2 (S.D.N.Y. Feb. 27, 2021)
(reducing life sentence to term of 35 years imprisonment because
of defendant's "overwhelming evidence" of "total rehabilitation"

18

and his health conditions that put him at severe risk of illness from COVID-19). Accordingly, the Defendant has not demonstrated "extraordinary and compelling" circumstances justifying relief.

Finally, the 3553(a) factors do not support a sentence reduction. Despite Defendant's arguments that he was recruited into the Crew at a relatively minor age, he was twenty at the time of Taylor's murder and twenty-five at the time of Campbell's. His criminal conduct does not display the hallmarks of youth but rather a multi-year long scheme of narcotics trafficking, armed robberies, and murder. Both the seriousness of the conduct of conviction, the need for punishment, and the need to protect the public from further crimes of this Defendant require that he serve his entire sentence.

To the extent that Defendant argues that his life sentence constitutes an unwarranted disparity, pointing to his co-defendants Saunders and Waite, Defendant is incorrect. As to Saunders, there is nothing unwarranted about a disparity between the sentences of a defendant who pleads guilty to different counts and receives a lower sentence, and one who goes to trial and is convicted of 15 counts, including two with a mandatory minimum of life. And, unlike the Defendant, Waite was acquitted of murder; as a result, he, unlike the Defendant, did not receive a mandatory life sentence. (See dkt. no. 413 at 7.) This is thus quite unlike the case upon which the Defendant principally relies, United States

v. Quinones, which compared two co-defendants found guilty of the same crimes after a jury trial.  2021 WL 797835, at *1.

Indeed, it is more apt to compare the Defendant's case to that of his co-defendant and brother, Hisan Lee, who went to trial and was found guilty on charges of racketeering, robbery, and murder.  (See dkt. no. 413 at 1, 9, 10.)  In 2021, the Court denied Hisan Lee's motion for compassionate release, finding that releasing him would "subvert at least three of the       §  3553(a) factors: (1) reflecting the seriousness of the offense, (2) punishing the offender, and (3) protecting the public from further crimes of the defendant," and that positive letters submitted in support of his release "cannot overcome the weight of those factors."  United States v. Lee, No. 07-CR-3 (LAP), 2021 WL 2328430, at *3 (S.D.N.Y. June 8, 2021).  The same is true here.[1]

---

[1] By way of supplemental letters, counsel has informed the Court that Defendant was transferred from a high security facility to a medium security facility.  (Dkt. nos. 1038, 1040.)  This positive development also does not change the result.

### III. <u>Conclusion</u>

For the reasons set forth above, Defendant's motion for plenary resentencing or in the alternative compassionate release (dkt. no. 1026), is denied.

**SO ORDERED.**

Dated:    New York, New York
          July 15, 2025

_Loretta A. Preska_
_____
LORETTA A. PRESKA
Senior United States District Judge